UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CENTRAL JERSEY CONSTRUCTION )
EQUIPMENT SALES, LLC, )
 )
    Plaintiff, )
 )    5:21-CV-203-REW
v. )
 )    OPINION & ORDER
LBX COMPANY, LLC, )
 )
    Defendant. )

\*\*\* \*\*\* \*\*\* \*\*\*

The case arises from a contract dispute between Central Jersey Construction Equipment Sales, LLC (Central), and LBX Company, LLC (LBX), which ping-ponged from New Jersey state court to federal court and then Kentucky's Eastern District. *See* DE 1 (Notice of Removal); DE 1-1 (State Court Pleadings); DE 38 (Verified Amended Complaint). En route, Central adapted its claims to sound in Kentucky law. *See* DE 38. LBX now moves to dismiss, claiming that—despite revision—Central's claims fail under Rule 12(b). *See* DE 41 (Motion to Dismiss). Central responded. *See* DE 42 (Response). LBX replied. *See* DE 44 (Reply). The motion is ripe for review.

## I. Facts[1]

Starting in 2003 Central, as an independent seller, sold, serviced, and repaired hydraulic excavators, scrap and material handling equipment, and related parts manufactured by LBX. *See* DE 38 at ¶¶ 5-6. Central then wanted to become a contracted

---

[1] The Court gleans the facts from the Amended Complaint and attached exhibits, considering well-pled allegations as true under the *Iqbal* and *Twombly* standard. *See* DE 38; DE 38-1 (Dealer Agreement); DE 38-2 (Termination Letter).

dealer and, after roughly two years of negotiations, the parties executed a Dealer Agreement. *See id.* at ¶¶ 7-8; *see also* DE 38-1. Central agreed to operate its LBX dealership in certain contract-specified territories across New Jersey. *See* DE 38 at ¶¶ 7-8. Additionally, the detailed contract automatically renewed each year and contained a limitation clause[2] and a merger/integration clause.[3] *See id.* at ¶ 8; *see also* DE 38-1 at §§ 12.1, 13.1, 16.5.

In 2011 LBX allegedly asked Central to open a new location near northern New Jersey—either on Staten Island or in Middlesex County—and stated that Central would receive a new Dealer Agreement upon opening the new facility. *See* DE 38 at ¶ 11. Central languished in the Staten Island location before, at LBX's direction, Central pivoted to a different location in Middlesex County. *See id.* at ¶ 12. In 2016, Central moved to the new Middlesex County location. *See id.* at ¶ 13. Central continued to request a new Dealer Agreement that would cover the new location; LBX indicated that it would soon provide a new Dealer Agreement covering the territory. *See id.* at ¶ 14.

Later, at a Las Vegas tradeshow in March 2017, Central met with LBX executives to discuss their business relationship. *See id.* at ¶ 15. LBX indicated they maintained a positive business relationship and that a new Dealer Agreement was forthcoming. *See id.* Central requested a new Dealer Agreement multiple times in the following months but never received one. *See id.* Rather, LBX simply told Central that they should continue

---

[2] The limitation clause states in relevant part: "[A]ny action by the Company or Dealer pertaining to this Agreement must be instituted within one year after the accrual of the claim upon which such action is based." DE 38-1 at § 12.1.

[3] The merger/integration clause states: "All understandings and agreements, written or oral, heretofore had or made between the parties with respect to any of the subject matters herein, are merged into this Agreement which alone fully and completely expresses their agreement." DE 38-1 at § 16.5.

2

business as normal, and their relationship remained good. *See id.* Despite the many claimed oral representations, the parties simply kept automatically renewing the original 2005 agreement, year after year. This included an August 2018 renewal.

Then, on July 31, 2019, LBX informed Central that it would not renew the Dealer Agreement per § 13.1, triggering expiration on August 31, 2019. *See* DE 38-2 (Termination Letter). LBX did not indicate a basis or reason for termination. *See id.* On November 3, 2020, Central sued LBX in New Jersey state court.[4] *See* DE 1-1 at 50. Central eventually included claims for faulty termination and failure to repurchase inventory under KRS §§ 365.800-.840, the Kentucky Retail Sales of Equipment Act (KRSEA). Central also alleges that the years of inducements, forecasts, or representations establish a basis for promissory estoppel. LBX, in the present motion, faults each theory under Rule 12(b); LBX argues that the Act either provides no claim or that Central misses claim mandates. LBX also relies on the negotiated limitations period as a bar and foundationally resists promissory estoppel.

The Court largely agrees and will dismiss. Central includes no factual assertions to prop the repurchase claim. Further, both it and any statutory breach claim are plainly tardy under the longstanding private limitations period in the Dealer Agreement. The record, sequence, and law do not support applying promissory estoppel in this case. The Court thus dismisses this case with prejudice.

---

[4] LBX first removed the case to the District of New Jersey, which then transferred the case here. *See* DE 16 (Transfer Order).

## II. Legal Standards

Rule 12 governs Defendant's arguments on claim validity.[5] Rule 12(b)(6) provides that "every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion . . . failure to state a claim upon which relief can be granted." "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (cleaned up) (internal citations omitted). "The reviewing court must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). In considering a motion to dismiss under 12(b)(6), "[t]he court should not assume facts that could and should have been pled, but were not." *Id.* at 522.

Generally, "matters outside of the pleadings are not to be considered by a court in ruling on a . . . motion to dismiss." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). However, the Court may "consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc.*

---

[5] In a diversity case, federal courts apply the choice of law rules of the state in which they sit. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 61 S. Ct. 1020, 1021-22 (1941). The Court does not dwell on this point because no party contests the issue, and the Dealer Agreement provides for Kentucky substantive law to govern this dispute. *See* DE 38-1 at § 16.3 (describing the choice of law clause in the Dealer Agreement). However, under *Erie*, the court applies federal procedural rules. *See Erie R.R. Co. v. Tompkins*, 58 S. Ct. 817, 828 (1938).

*v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (internal quotation marks and citation omitted). The Court may also consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Where plaintiffs state "simply, concisely, and directly events that . . . entitle[] them to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement." *Id.*; *El-Hallani v. Huntington Nat'l Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low.").

### III. Argument

Central claims LBX violated two statutes governing the Dealer Agreement and also should be estopped from failing to "fulfill its promises to Central." *See* DE 38 at ¶¶ 22-30 (Counts I and II, describing Central's claims).

#### *a. Inventory Repurchase*

Central first alleges that LBX violated the KRSEA by failing to repurchase inventory post-termination. *See* DE 38 at ¶¶ 22-25; *see also* KRS § 365.800-840.[6] The Complaint's content, in its entirety, is contained in ¶ 24: "Additionally, LBX has failed to repurchase and pay Central all amounts owed under KRS 365.800 through 365.840." There is no more. The Complaint does not allege what is owed, why it is owed, any specifics of

---

[6] The Court assumes the KRSEA applies; LBX does not resist.

the claim, or any other factual meat. As LBX observes, the claim is, in essence, "LBX owes Central." That is not enough under Rule 12.

LBX focuses on the lack of an alleged shipping trigger under § 365.825. As the Court reads the KRSEA, the inventory repurchase obligation (which has many statutory particulars and some party options) generally applies to a terminated retail agreement contract. *See* KRS 365.805 (including "the supplier shall repurchase the inventory"); 365.825 (authorizing cause of action and implementing claim mechanics). The obligation ripens under § 365.825, which also provides an enhanced remedy for violation.

Kentucky courts have not yet analyzed whether parties must allege shipment of inventory, as a claim trigger, under KRS § 365.825.[7] Kentucky law defines the claim, but federal law provides the pleading rubric. *See supra* n.5. Therefore, the Court must first determine whether the Kentucky Supreme Court would require alleging shipment of inventory as an element of a KRS § 365.825 cause of action. *See Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358 (6th Cir. 2013) (citing *Erie*, 58 S. Ct. at 822). The Court looks to analogous Kentucky law and law from other jurisdictions to decipher how the Kentucky Supreme Court would rule on the issue. *Conlin*, 714 F.3d at 359; *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004).

Kentucky courts, unsurprisingly, look to the governing statute to divine the elements of a cause of action. *See, e.g.*, *Stinson v. Commonwealth*, 396 S.W.3d 900, 903 (Ky. 2013). As is typical, the courts in Kentucky interpret statutes to effectuate the

---

[7] Scant cases discuss liability under the KRSEA generally. *See Leon Mfg. Co. v. Wilson Kubota, LLC*, 199 S.W.3d 759 (Ky. Ct. App. 2006); *Mountain Motorsports Paving & Constr. LLC*, No. 14-76-ART, 2014 WL 5341865; *Link-Belt Constr. Equip. Co., L.P. v. Rd. Mach. & Supplies Co.*, No. 10-103-KSF, 2011 U.S. Dist. LEXIS 41404, at *27 (E.D. Ky. Apr. 15, 2011).

legislature's intent, and "the plain meaning of the statutory language is presumed to be what the legislature intended." *Revenue Cabinet v. H.E. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) (cleaned up); *see also Pate v. Dept. of Corrections*, 466 S.W.3d 480, 488 (Ky. 2015). "Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history; the canons of construction; or, especially in the case of model or uniform statutes, interpretations by other courts." *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011).

Starting with the statutory language, KRS § 365.825 states in relevant part: "If any supplier fails or refuses to repurchase any inventory covered under the provisions of KRS 365.800 to 365.840 within sixty (60) days after shipment of the inventory to the supplier, the supplier shall be liable in a civil action[.]" KRS § 365.825 plainly makes shipment one trigger for the payment deadline (and thus is a resulting gate to litigation). Central does not allege that it or anyone shipped inventory to LBX.

More fundamentally, Central includes no factual averments pertinent to repurchase. Central does not claim that it held inventory under the Dealer Agreement, which is critical to KRS § 365.805. It does not claim that it had defined "inventory" at the time of termination. It does not allege an election for repurchase (as opposed to retention, per KRS § 365.805) or in any way limn the scope or value of the claim. *Twombly/Iqbal* does not require a granular digest of the case, but the standard is *factual*. There must be enough "factual content" to allow a plausible inference of liability from the face of the pleading. *See Johnson*, 135 S. Ct. at 347. Simply, as here, alleging that party A owes party B under a generic reference to an entire KRS subchapter—an exercise in fatally conclusory

7

pleading—is inadequate. The Court **DISMISSES** the repurchase theory as insufficiently pleaded.

### *b. Breach—Cause of Action and Statute of Limitations*

Central also claims LBX violated the KRSEA when it terminated the Dealer Agreement. *See* DE 38 at ¶¶ 22-25. The Act purports to condition any termination (including non-renewal under KRS § 365.800(8)) of a covered contract on proper cause. *See* KRS § 865.831(1)). LBX stated no cause for non-renewal, and it did not follow statutory notice requisites.

LBX contends that the Act provides no distinct cause of action for a noncompliant termination. The Court would not dismiss on this basis. Indeed, the Act includes a targeted remedy only for failure to comply with the repurchase obligation. *See* KRS 365.825. Because the Act plainly regulates the supplier-retailer relationship, plainly provides no inclusive remedy to reach the statute's boundary, and exists to protect retailers in the trade, the Court, without deciding, expects that KRS § 446.070 would pertain. *See* KRS § 446.070 ("A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation[.]"); *Thompson v. Breeding*, 351 F.3d 732, 736 (6th Cir. 2003) ("Section 446.070 'was passed to remove any doubt that might arise as to the right of a person for whose protection the statute was passed to recover for a violation of that statute where the statute was penal in its nature, or where by its terms the statute did not prescribe a remedy for its enforcement or violation.'"); *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). However, the limitations argument, which does prevail, eliminates the need for a definitive ruling on claim existence.

LBX argues the Court should dismiss this claim because, among other things, it is untimely under the Dealer Agreement's one-year limitation clause. *See* DE 41 at 9-13; *see also* DE 38-1 at § 12.1 (Dealer Agreement).

"Kentucky case law has long upheld the validity of contractual terms that deliberately depart from statutory limits and instead provide for shorter limitation periods." *Schultz v. Cooper*, 134 S.W.3d 618, 621 (Ky. Ct. App. 2003). This extends to statutory violations. *See, e.g.*, *Dunn v. Gordon Food Services, Inc.*, 780 F. Supp. 2d 570 (W.D. Ky. 2011). To validly shorten the limitation span, the truncated period must: (1) be reasonable, and (2) not conflict with a limitation period provided in the specific statute creating the cause of action. *See State Farm Mut. Auto. Ins. Co. v. Riggs*, 484 S.W.3d 724, 727-28 (Ky. 2016); *Elkins v. Ky. Farm Bureau Mut. Ins. Co.*, 844 S.W.2d 423, 425 (Ky. Ct. App. 1992).

There are no Kentucky cases addressing a negotiated limitation period in the context of the Act. However, Kentucky courts have consistently allowed shortened limitations periods in the insurance context. *See, e.g.*, *Webb v. Ky. Farm Bureau Ins. Co.*, 577 S.W.2d 17, 19 (Ky. Ct. App. 1978) (noting "there is a solid line of case law in Kentucky that upholds the validity of contractual terms that provide for shorter limitation periods than the general statute of limitations"). Concerning commercial breach of contract actions, "[p]arties are at liberty to contract for a limitation period less than the period fixed by statute." *Munday v. Mayfair Diagnostic Lab.*, 831 S.W.2d 912, 914 (Ky. 1992). Further Kentucky courts have allowed parties to shorten the five-year KRS § 413.120(2) limitation period—the limitation period at play here for a statute-based claim—in employment contracts, even as to civil rights interests. *See Croghan v. Norton Healthcare, Inc.*, 613 S.W.3d 37, 42 (Ky. Ct. App. 2020) (finding parties generally could shorten the KRS

9

§ 413.120(2) five-year limitations period but voiding the particular clause as violative of a particular statute and, situationally, unreasonable). Additionally, other jurisdictions allow parties to shorten the limitation period for statutory claims. *See Reynolds Indus., Inc. v. Mobil Oil Corp.*, 618 F. Supp. 419, 424 (D. Mass. 1985) (enforcing a one-year limitation period); *Hampden Coal, LLC v. Varney*, 810 S.E.2d 286, 295-96 (W. Va. 2018) (enforcing a one-year limitation period); *Myers v. Western-Southern Life Ins. Co.*, 849 F.2d 259, 261-62 (6th Cir. 1988) (enforcing a six-month limitation period).

Although this case does not involve insurance, it similarly concerns shortening a cross-referenced and generalized statute of limitations. *See Webb*, 577 S.W.2d at 17 (analyzing a shortened limitations period against the standard fifteen-year limitations period provided in KRS § 413.090(2)). Kentucky courts have allowed shortened limitations periods concerning the exact limitation statute involved here. There is no prohibition in the Act against a negotiated claim period, and Kentucky law would not proscribe an agreed truncation of the statutory default term.

Even though the parties may shorten an applicable limitation, the period must (1) not conflict with a specific limitation period established in the statute creating the cause of action, and (2) be reasonable. *See Riggs*, 484 S.W.3d at 727-28; *Elkins*, 844 S.W.2d at 425.

The Act contains no specific limitation period. Thus, the five-year limitation period in KRS § 413.120(2) applies. On the first element, the shortened one-year limitation period is valid.

The shortened period must also be reasonable. *Elkins*, 844 S.W.2d at 425. Kentucky courts have not definitively pinpointed the list of factors to assess reasonableness. However, previously considered factors include: the balance of bargaining power between

10

the parties, evidence of duress or coercion (or a lack thereof), whether the agreed limitation period provides the claimant sufficient time to investigate and file an action, whether the agreed limitation period practically abrogates the right of action, and whether the limitation period would bar suit before any loss or damage could be ascertained. *See Schultz*, 134 S.W.3d at 621 (addressing the parties' bargaining power and lack of duress); *Croghan*, 613 S.W.3d at 44 (addressing the final three factors).[8]

Here, the agreed limitation period is clear, part of a renewed relationship dating to 2005, and, in context, reasonable. Section 12.1 applies the one-year deadline to any action "pertaining to" the Agreement. DE 38-1 at § 12.1. Obviously, an action alleging improper termination of the Agreement *pertains* to same. Further, Central well knew the period, which was an unchanged fixture in the contract for each renewed term from 2005 until termination. Central also had immediate notification of the claim (and of the contractual sorting, *e.g.*, over inventory). LBX gave notice in August of 2019 preliminary to August 31, 2019, expiration. *See* DE 38-2. Central had every fact it needed when the claim accrued.

To resist the effect of Section 12.1, Central vaguely references a need for discovery. A limitation period can resolve a case at the Rule 12 stage. *See Am. Premier Underwriters, Inc. v. AMTRAK*, 839 F.3d 458, 464 (6th Cir. 2016) ("[W]here one can determine from the face of the complaint that the statute of limitations has run, dismissal is appropriate."); *see also Bishop*, 520 F.3d at 520. Although the Court often would defer such consideration, if unanswerable on the pleadings, Central here does not actually list any factual issues

---

[8] Kentucky Courts have also considered the commonality of the shortened limitations period in the industry. *Hale v. Blue Cross & Blue Shield of Kentucky, Inc.*, 862 S.W.2d 905, 907-08 (Ky. Ct. App. 1993) (addressing the commonality of the shortened term in the insurance industry).

11

pertinent to the analysis. In the face of a clear term, between commercially contracting parties, and absent an indication of a matter for dispute in further litigation, the Court will apply Section 12.1 and dismiss[9] the claims that pertain to the Agreement; Count I is dismissed.[10] Central merely seeks a categorical deferral to the summary judgment stage, but without some suggestion of a factual issue for development, the Court bends to the clear facial record.

### c. Promissory Estoppel

Lastly, Central claims promissory estoppel. *See* DE 38 at ¶¶ 26-30. Central urges the Court to estop LBX from "refusing to fulfill its promises to Central" regarding future or revised contract terms. *See id.* at ¶ 29. In essence, Central alleges LBX made promises or statements through the years for a new Dealer Agreement including expanded or revised territory.

Kentucky law recognizes the doctrine, under these requirements:

> Promissory estoppel is described as follows: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

*Vogt, the Cleaners, Inc. v. Hamhed, LLC*, No. 2019-CA-1839-MR, 2021 WL 647118, at *6 (Ky. Ct. App. Feb. 19, 2021) (quoting *Meade Const. Co., Inc. v. Mansfield Commercial*

---

[9] There is no conflict here with KRS § 365.834, the Act's protection against waiver. The negotiated limitation period regulates the timing of litigation; it does not suspend or affect any of the substantive rights of the parties, statutory or otherwise.

[10] This also encompasses the inventory repurchase claim, as an alternative basis for dismissal. Part of that theory is that Central held inventory as required by the "retail agreement contract." This also renders the claim one "pertaining" to the Agreement and thus subject to Section 12.1. *Cf.* DE 38-1 at § 12.1. As holder of any such inventory at termination, Central well and timely knew the contours of any such claim.

*Elec., Inc.*, 579 S.W.2d 105, 106 (Ky. 1979)). In the Complaint, Central references non-specific and generally dated promises or representations from LBX regarding the issuance of new agreements if Central fulfilled certain locational or marketing demands. *See* DE 38 at ¶¶ 11 (2011), 12 (2012), 12 (2016), 15 (2017). Importantly, each year the parties auto-renewed the Dealer Agreement. *See id.* at ¶¶ 9, 17. The Dealer Agreement contained a merger clause (DE 38-1 at § 16.5), barred oral modification (*id.* at § 16.4), and reserved to LBX's "sole discretion" the revision of "Dealer's Territory" (*id.* at § 2.1). Central alleges no promises after 2017.

For multiple reasons, the promissory estoppel claim fails:

First, the Complaint lacks adequate factual content as to the alleged promises and representations. Central does not identify the speaker(s), the particular date, or the precise verbiage as to a "forthcoming" but prospective agreement. Such generalities do not, even viewed in Central's favor, cross into plausibility.

Second, the Dealer Agreement extant through the years overlaps significantly with the prospective and estoppel subject matter. LBX and Central included Middlesex County within the assigned territory. *See* DE 38-1 at § 2.1. LBX retained discretion to revise territory. *See id.* The Dealer Agreement, which "alone fully and completely expresses their agreement," *see id.* at § 16.5, defines the supplier-retailer relationship and scope. Thus, the issue of expansion into the named County, arguably any county, is part and parcel of the negotiated and long-standing contract. Kentucky does not extend promissory estoppel when the parties' agreement encompasses the same realm. *See Tractor & Farm Supply, Inc. v. Ford New Holland, Inc.*, 898 F. Supp. 1198, 1205-06 (W.D. Ky. 1995) (holding that promissory "estoppel cannot be the basis for a claim if it represents the same performance

13

contemplated under a written contract"); *Shane v. Bunzl Distribution USA, Inc.*, 200 F. App'x 397, 404 (6th Cir. 2006) ("Given that the district court correctly determined that the May 1995 letter was an express, enforceable contract and constituted the entirety of the agreement between Shane and Bunzl, Shane may not also rely upon the doctrine of promissory estoppel."). This merger principle precludes Central's reliance on promissory estoppel.

Third, even if LBX expressed its intent to enter a new agreement, that expression would not be actionable under Kentucky law. Kentucky does not enforce agreements to negotiate or contract in the future, and the putative representations here hardly establish the full material terms of a prospective pact. As the Eastern District has highlighted, "while the modern contracting trend would enforce a preliminary agreement that essentially binds the parties to good faith negotiations on open terms, Kentucky treats a preliminary agreement—even one evincing intent to be bound—as unenforceable if material terms remain subject to future or further negotiation." *First Tech. Cap., Inc. v. JPMorgan Chase Bank, N.A.*, 53 F. Supp. 3d 972, 984, 988 (E.D. Ky. 2014) (further indicating that "[e]ven if the parties might likely agree to future terms, even if the parties **almost** agree to future terms, the fact that terms remain for future negotiation and agreement at the alleged contract date renders an agreement-to-agree unenforceable in Kentucky.") (emphasis in original).

Finally, given the law cited in the last paragraph and the Dealer Agreement's insistence on only written modifications, *see* DE 38-1 at § 16.4, Central could not continue to renew the Dealer Agreement (with such renewals all occurring after the last stated promise) and yet have relied reasonably on the merged, oral representations in making

14

decisions or investments. *See Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 642–43 (Ky. Ct. App. 2003) ("A party cannot reasonably rely on oral statements when it has acknowledged in writing several times that oral statements are not binding and may not be relied upon."). Central cannot invoke promissory estoppel to elude, supplant, or redefine the parties' repeatedly reaffirmed and binding agreement.

For each and all of these reasons, the Court finds that Count II fails to state a claim.

### IV. Conclusion

The Court **GRANTS** DE 41 and **DISMISSES** Central's claims against LBX, with prejudice. The Court will enter a separate judgment.

This the 15th day of June, 2022.

Signed By:
*Robert E. Wier* /s/ REW
United States District Judge